UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**WILLIAM SMITH,**

      **Plaintiff,**

**v.**                                              **Case No: 6:11-cv-1332-Orl-31KRS**

**CITY OF OAK HILL, FLORIDA, SHANE CHANDLER and MICHAEL IHNKEN,**

      **Defendants.**

## ORDER

This matter comes before the Court without a hearing on the Motion for Summary Judgment filed by Defendant Sgt. Michael Ihnken ("Ihnken") (Doc. 93), the Motion for Summary Judgment filed by Defendant Shane Chandler ("Chandler") (Doc. 94), and the Motion for Summary Judgment filed by Defendant City of Oak Hill ("Oak Hill" or the "City") (Doc. 95). In resolving these motions, the Court has also considered the responses (Doc. 108, 109, 120) to those motions filed by the Plaintiff, William Smith ("Smith"), and the replies (Doc. 118, 119, 124) filed by the movants.

**I.**    **Background**

Except where indicated, the following facts are undisputed. On the evening of April 11, 2007, Smith was driving in a Ford Expedition owned by his girlfriend along U.S. Highway 1 in Oak Hill, Florida. Defendant Shane Chandler, an Oak Hill police officer, was patrolling U.S. 1, accompanied by Justin Dunne ("Dunne"), a Daytona Beach police officer. Chandler initiated a traffic stop of Smith's vehicle, and Smith, who was alone in the Expedition, pulled over to the side of the road.

Chandler approached the vehicle, accompanied by Ihnken, who was also a member of the Oak Hill police force and who had responded as backup.[1] Smith rolled down the windows of the Expedition. Chandler and Ihnken both contend that when Smith did so, they smelled an odor of burnt cannabis coming from the vehicle. After Chandler and Ihnken conferred out of Smith's earshot, Smith was removed from the vehicle, and Chandler began to search the passenger compartment. In a cup holder in the vehicle's center console, Chandler found a covered ashtray. Inside the ashtray was at least a portion[2] of a hand-rolled cigarette, which field-tested positive for cannabis. Smith was handcuffed and placed in the back of Ihnken's patrol vehicle. Chandler and Ihnken then continued their search of the Expedition and discovered a gym bag that held five plastic baggies containing marijuana, several dozen small baggies containing powder cocaine. Also found in the gym bag were a 9mm handgun and a loaded magazine.

Smith was arrested and charged with several drug and weapons violations. Smith subsequently filed a motion to suppress, arguing that the police lacked probable cause to pull him over. The prosecution argued that Chandler had valid grounds for initiating the stop because he saw Smith swerving over the white line on the edge of his lane. After viewing video from Chandler's dash camera and hearing testimony from Chandler, the state court judge sided with Smith and granted the motion to suppress. Subsequently, the state dropped the charges.

On April 11, 2011, Smith filed the instant suit in state court, alleging violations of 42 U.S.C. § 1983 and state law. On August 11, 2011, the case was removed to this court. The complaint (Doc. 2) originally included seventeen claims. After motion practice, only the following claims remain: Count I, a Section 1983 claim against Chandler and Ihnken, alleging violations of Smith's rights under the Fourth Amendment; Count V, a Section 1983 policy or

---

[1] Dunne remained in Chandler's vehicle.
[2] The record is not clear whether the cigarette was whole or had been partially smoked.

practice claim against Oak Hill; Count VIII, a false arrest claim against Chandler; Count XII, a false arrest claim against Ihnken; and Count XVI, a malicious prosecution claim against Chandler and Ihnken.  By way of the instant motions, the Defendants each seek summary judgment as to all the claims against them.  Because the motions encompass essentially the same facts and a number of the same legal issues, the Court addresses them in a single order.

**II.    Standards**

A.    **Summary Judgment**

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. Anderson, 477 U.S. at 255. The Court is not, however, required to accept all of the non-movant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir 1994).

### B. Section 1983

Title 42 U.S.C. § 1983 provides, in relevant part, that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in action at law, suit in equity, or other proper proceeding for redress.

Municipalities are "persons" for purposes of Section 1983. *Monell v. Dep't of Social Servs. of New York*, 436 U.S. 658, 663, 98 S.Ct. 2018, 2022, 56 L.Ed.2d 611 (1978). However, a municipality may not be held liable under Section 1983 solely because it employs a tortfeasor. *Board of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 1387, 137 L.Ed.2d 626. Liability attaches under Section 1983 only to those actors who violate a plaintiff's rights. *Monell* at 690–91, 98 S.Ct. at 2036. Municipalities can only be held liable under Section 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental custom even though such custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690–91, 98 S.Ct. at 2035–36. In *City of Canton v. Harris*, the Supreme Court held that a municipality's failure to train its employees can result in liability under Section 1983, but only where that failure to train "evidences a deliberate indifference to the rights of its inhabitants" and "reflects a

- 4 -

deliberate and conscious choice by a municipality — a "'policy' as defined by our prior cases." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989).

### C.     Qualified Immunity

Qualified immunity protects government officials performing discretionary functions from individual liability as long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzge*rald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Qualified immunity is an immunity from suit rather than a mere defense to liability, and it is effectively lost if a case is erroneously permitted to go to trial. *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). Unless the plaintiff's allegations state a claim of violation of a clearly established constitutional right, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001). Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in question in fact committed those acts. Mitchell, 472 U.S. at 526, 105 S.Ct. at 2815.

To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority. *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003). Once the defendants establish this, the burden shifts to the plaintiffs to show that qualified immunity is not appropriate. Id. The Supreme Court has established a two-part test to determine whether qualified immunity should apply. The court must determine whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736, 122 S.Ct. 2508, 2514, 153 L.Ed.2d 666 (2002). This requires the court to determine whether the facts alleged, taken in the

light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right. *Gonzalez*, 325 F.3d at 1234. The second prong of the test requires the court to determine whether the right was "clearly established." Id. Although it will often be appropriate to consider whether a constitutional violation has been alleged before assessing whether the right at issue is clearly established, the two determinations may be made in either order. *Pearson v. Callahan*, 555 U.S. 223, —, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009).

A warrantless arrest without probable cause violates the Constitution and provides a basis for a Section 1983 claim, but the existence of probable cause at the time of the arrest constitutes an absolute bar to a Section 1983 action for false arrest. *Case v. Eslinger*, 555 F.3d 1317, 1326-27 (11th Cir. 2009). In addition, qualified immunity protects officers who reasonably but mistakenly conclude that probable cause is present. *Garczynski v. Bradshaw*, 573 F.3d 1158, 1167 (11th Cir. 2009). Whether a particular set of facts gives rise to probable cause or arguable cause for arrest depends on the elements of the crime. *Crosby v. Monroe County*, 394 F.3d 1328, 1333 (11th Cir. 2004). Where the facts are undisputed, whether probable cause existed is a question of law. *Marx v. Gumbinner*, 905 F.2d 1503, 1506 (11th Cir. 1990).

**III.   Analysis**

**Affidavit of Officer Dunne**

Dunne, a Daytona Beach police officer, was riding along with Chandler on the night in question and witnessed the events leading up to the stop of Smith's vehicle.[3] He has provided an affidavit (Doc. 94-2) that corroborates Chandler's version of the events preceding the stop. Smith argues that the affidavit should be stricken because Dunne was never disclosed as a witness and it is now too late to depose him. (Doc. 108 at 7). However, in their initial Rule 26 disclosures, the

---

[3] It is undisputed that Dunne remained in Chandler's vehicle during the stop and the search of the Expedition.

Defendants listed "Officer Jeffrey Dunn of the Daytona Beach Police Department." (Doc. 118-1 at 3, Doc. 118-2 at 2). For that matter, so did Smith. (Doc. 118-3 at 1). The name was slightly off – "Officer Jeffrey Dunn" rather than "Officer Justin Dunne" – but all of the other information (including the police department he worked for and his address) was correct. Smith can hardly claim surprise here.

### Section 1983 Claim against Oak Hill

In his response to the City's motion, the Plaintiff argues that the officers who stopped him and searched the vehicle in which he was traveling lacked probable cause to do so. That issue is addressed in detail below. However, even assuming *arguendo* that the officers lacked probable cause for either the stop or the search, that would not be enough to hold the City liable under Section 1983. The City can only be held responsible if the officers were acting pursuant to an Oak Hill policy or custom.

To try to meet his evidentiary burden on this point, Smith argues that Ihnken had "numerous allegations of inappropriate and possibly even unlawful activity while he was employed by the City of Oak Hill" and that the City failed to act in response to the allegations. In support, Smith cites an article from something called "nsbnews.net" (Doc. 120-14) that recites a number of allegations against Ihnken. The article is obviously hearsay, contains double hearsay, and is, on its face, inadmissible. Smith makes no arguments in favor of the article's admissibility.

Further, the article is dated years after Smith's arrest and discusses events that also occurred well after that date. Thus neither the article nor the (alleged) events it discusses could have served to put the City on notice of any problems involving Ihnken. Finally, so far as the Court's review has revealed, none of alleged misdeeds referred to in the article resemble those

alleged here, such as profiling or Fourth Amendment violations.[4]  In short, this article is neither admissible nor relevant and cannot help Smith meet his burden of showing that the City maintained a policy or custom of allowing its officers to stop, search or arrest individuals in violation of the Fourth Amendment.  And Smith offers nothing else.  Accordingly, the City is entitled to summary judgment.

**Probable cause**

The issue of probable cause lies at the heart of Smith's Section 1983, false arrest, and malicious prosecution claims.  Smith asserts that his Fourth Amendment right to be free from unreasonable searches and seizures was violated because his vehicle was stopped and searched without probable cause and because he was arrested without probable cause.  In addition, a claim for false arrest and false imprisonment will not lie where the officer has probable cause to detain the suspect.  *Grix v. Fla. Fish & Wildlife Comm'n*, 821 So.2d 315, 316 (4th DCA 2002).  And finally, to prevail on a claim for malicious prosecution under Florida law, a plaintiff must prove, *inter alia*, the absence of probable cause for the initiation or continuation of the criminal or civil judicial proceeding at issue.  *Burns v. GCC Beverages, Inc.*, 502 So.2d 1217, 1218 (Fla. 1986).

There are three points on the night in question when the officers were required to have more than just an inchoate suspicion to act as they did:  When Smith's vehicle was stopped, when Smith's vehicle was searched, and when Smith was arrested.  Although Smith attempts to argue to the contrary, [5] it cannot seriously be disputed that a police officer who finds a private citizen

---

[4] It is alleged, in the article, that Ihnken took online training courses in the name of other police officers, and that at least one of these courses dealt with traffic stops.  (Doc. 120-14 at 3).  However, there is no allegation that Ihnken cheated on any of his own courses or that Chandler was one of the individuals for whom Ihnken allegedly took the course.

[5] Relying on *Links v. State*, 927 So.2d 241 (Fla. 2d DCA 2006), Smith argues that the fact that he was found in the car with the duffel bag full of drugs was not enough, alone, to establish a presumption that he was in constructive possession of the drugs.  However *Links* is not a probable

travelling alone in a vehicle with a duffel bag full of contraband in the front seat has probable cause to make an arrest for possession – at least in the absence of special circumstances or a compelling explanation, neither of which are present here. Thus the Court must consider whether probable cause existed in regard to the initial stop and whether probable cause existed to search Smith's vehicle.

**The initial stop**

A traffic stop is a seizure within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10 (1996). As a general rule, a traffic stop is reasonable where the police have probable cause to believe that a traffic violation has occurred. *Id.* In their respective affidavits, Chandler and Dunne state they witnessed the Expedition driven by Smith twice cross the solid white line (referred to as the "fog line") marking the boundary of its lane.[6] Smith does not dispute Chandler's contention that crossing the fog line in that fashion is a violation of Florida Statute § 316.074, which requires obedience to traffic control devices. Chandler states that this violation led him to initiate the traffic stop.[7]

Smith offers two arguments as to why Chandler is not entitled to summary judgment on the issue of probable cause for the stop. First he argues that the issue of probable cause for the stop has already been resolved against Chandler by the state court judge who granted the motion to suppress, and that collateral estoppels bars any effort to relitigate the issue here. Collateral estoppel applies in a Section 1983 case just as in any other federal case. *See Allen v. McCurry*,

---

cause case. The issue in *Links* was whether the prosecution had proved constructive possession at trial, not whether the arresting officer had probable cause to believe that the defendant was in possession of contraband and was therefore subject to arrest. *Id.* at 243.

[6] Smith does not dispute that Chandler rather than Ihnken made the decision to stop his vehicle.

[7] Chandler also states that he had a belief that the Expedition "might be somehow malfunctioning and unsafe" or that the driver might be "sick, injured or impaired by alcohol or drugs". (Doc. 93-1 at 5).

- 9 -

449 U.S. 90, 91, 101 S. Ct. 411, 413, 66 L. Ed. 2d 308 (1980). The full faith and credit statute, 28 U.S.C. § 1738, requires that federal courts give preclusive effect to a state-court judgment whenever the courts of the state from which the judgment emerged would do so. *Farred v. Hicks*, 915 F.2d 1530, 1533 (11th Cir. 1990). Accordingly, this Court must look to Florida law to determine the preclusive effect in this case of the state court's probable cause determination.

Under Florida law, collateral estoppel only applies where the identical issue has been litigated between the same parties or their privies. *Stogniew v. McQueen*, 656 So.2d 917, 919 (Fla. 1995). Here, the issue is identical in both cases, but Chandler was not a party to the criminal case. To be in privity with one who is a party to a lawsuit, one must have "an interest in the action such that she will be bound by the final judgment as if she were a party." *Gentile v. Bauder*, 718 So. 2d 781, 783 (Fla. 1998). As a general rule, police officers have no greater interest in the outcome of criminal proceedings than any other citizen of the state. *Id.* Because Chandler was neither a party to the criminal proceedings nor in privity with a party, he is not bound by the state court's probable cause determination.

In addition to his collateral estoppel argument, Smith also disputes the version of events put forth by Chandler and Dunne. In his own affidavit, he states that he had not swerved over the white line before he was pulled over. (Doc. 109-5 at 2). This raises a genuine issue of material fact as to whether Chandler possessed probable cause to initiate the traffic stop. Accordingly, summary judgment will be denied as to this point.[8]

---

[8] Chandler argues that the facts in this case strongly resemble those in *DelValle v. Smith and City of Hallandale Beach*, 2012 WL 2222207 (S.D.Fla. 2012), which involved a driver being pulled over for violating Florida Statute § 316.074 after allegedly swerving over the fog line several times. The *DelValle* court found that probable cause existed for the stop and granted summary judgment to the officer; however, unlike the situation in this case, it appears that DelValle did not produce an affidavit disputing the officer's version of events. *See id.*

**The search of the Expedition**

"The Fourth Amendment generally requires police to secure a warrant before conducting a search." *Maryland v. Dyson*, 527 U.S. 465, 466, 119 S.Ct. 2013, 2014, 144 L.Ed.2d 442 (1999). Searches of vehicles, however, are an established exception to the requirement for a warrant. *Id.* The automobile exception allows officers to search any item or compartment in the car that might contain the object of the search without a warrant, as long as they have probable cause to believe that it holds evidence of a crime. *United States v. Strickland*, 902 F.2d 937, 942 (11th Cir.1990).

Ihnken argues that he is entitled to summary judgment based on the "fellow officer rule," which permits an arresting officer to assume that probable cause exists based on information supplied by other officers. *Voorhees v. State*, 699 So. 2d 602, 609 (Fla. 1997). However, the fellow officer rule only applies to information obtained while the arresting officer is not present. When an officer is present with a fellow officer and both observe the same course of events, it is unreasonable for an officer to rely upon the fellow officer rule to determine that probable cause exists. *Killmon v. City of Miami*, 199 Fed. Appx. 796, 800 (11th Cir. 2006). In his affidavit, Ihnken states that when he and Chandler initially approached the Expedition and Smith rolled down the windows, he smelled burnt cannabis coming from the car, and that this smell provided "reasonable suspicion that a crime [was] being committed within that vehicle." (Doc. 93-3 at 6). That "reasonable suspicion" is what is relied upon by the officers as providing the basis for the search, [9] which uncovered the cannabis in the ashtray and, subsequently, the duffel bag full of contraband, resulting in Smith's arrest. Given that he personally encountered the (alleged) burnt

---

[9] Under Florida law, a police officer smelling marijuana coming from a car window "unquestionably" has probable cause to search the passenger compartment of that vehicle." *State v. Betz*, 815 So. 2d 627, 633 (Fla. 2002).

- 11 -

marijuana odor that justified the search, Ihnken cannot rely on the fellow officer rule to establish probable cause.

Ihnken and Chandler both argue that they are entitled to summary judgment because Smith does not dispute that they smelled marijuana when they approached his vehicle. They point to the following passage from Smith's deposition:

> Q. In 2007, did you use marijuana?
>
> A. Yes, sir.
>
> Q. Had you used marijuana on or near April 7th, 2011 – I'm sorry – April 11th, 2007, sorry?
>
> A. I can't recall, sir.
>
> Q. It's possible?
>
> A. It's possible.
>
> Q. Is it possible that you used marijuana on April 11th, 2007?
>
> A. I can't recall, but it's possible.
>
> Q. So if the officer [sic] said they smelled marijuana coming either from the car or on you, that's possible?
>
> A. It could be possible.

(Doc. 93-4 at 69). It is true that, in that passage, Smith is not disputing that Chandler and Ihnken smelled burnt marijuana when they approached his vehicle. However, he is not admitting it, either. Later in his deposition, he denied ever having smoked marijuana in the vehicle and stated that the vehicle's owner did not smoke marijuana at all. (Doc. 93-4 at 90-91). By inference, at least, this testimony is at odds with the assertion that Chandler and Ihnken smelled a strong odor of burnt marijuana when they approached the vehicle. Furthermore, in his reply to the instant motion, Smith does dispute that the officers smelled marijuana and asserts that, after he was

stopped by Chandler, the officers "conspired to agree that they smelled the odor of burnt cannabis in order to have justification and legal cause to conduct a search of the vehicle." (Doc. 109 at 3).

A statement made in a reply to a motion is not admissible evidence. And Smith has not provided an affidavit (or other admissible evidence) directly contradicting the officers' contention that they smelled burnt cannabis when they approached the Expedition. However, Smith did provide an affidavit in which he testified that, after first approaching the Expedition, the officers conferred at the rear of the vehicle before informing him that they had smelled marijuana and were going to conduct a search. In addition, Smith contends (and Chandler and Ihnken do not dispute) that Chandler's onboard video of the encounter shows that the officers turned off their microphones while conducting this conference. (Doc. 109 at 3). Together, these items of evidence provide some support for Smith's contention that the officers agreed to lie about having smelled burnt marijuana so as to appear to have grounds to search his car. In addition, as detailed *supra*, Smith has challenged the legality of Chandler's initial stop of his vehicle, and that issue remains unresolved. If a factfinder were to determine that the stop was pretextual, that factual determination would at least arguably lend support to Smith's claim that the subsequent search of his vehicle was also based on a false premise. Based on this, the Court finds that Smith has demonstrated the existence of a genuine issue of material fact as to whether Ihnken and Chandler possessed probable cause to conduct the search that resulted in his arrest. Accordingly, summary judgment will be denied to those defendants as to all three counts.[10]

---

[10] Both officers also seek summary judgment on the basis of qualified immunity, which would require a lesser showing -- arguable probable cause rather than actual probable cause. However, qualified immunity protects officers who reasonably but mistakenly conclude that probable cause is present. *Garczynski v. Bradshaw*, 573 F.3d 1158, 1167 (11th Cir. 2009). In the instant case, no party has asserted that the officers made a reasonable mistake as to the existence of probable cause to conduct a search. Rather, they are accused of falsifying the basis for the search. Qualified immunity would not apply here.

**IV.    Conclusion**

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion for Summary Judgment (Doc. 93) filed by Defendant Sgt. Michael Ihnken and the Motion for Summary Judgment (Doc. 94) filed by Defendant Shane Chandler are **DENIED**, and the Motion for Summary Judgment filed by the City of Oak Hill is **GRANTED**.

**DONE** and **ORDERED** in Orlando, Florida on January 11, 2013.

_____
**GREGORY A. PRESNELL**
**UNITED STATES DISTRICT JUDGE**

Copies furnished to:

Counsel of Record
Unrepresented Parties